For a cause of action, plaintiff filed the following petition:
"1. That the F.W. Woolworth Company, a New York corporation domiciled at Watertown, New York, and duly authorized to do business and doing business in the State of Louisiana, and The Travelers, an insurance corporation existing under the laws of the State of Connecticut, duly authorized to do business and doing business in the State of Louisiana, are liable in solido, to your petitioner in the full sum of $17,242.00, together with legal interest on that amount from date of judicial demand until paid, for this to-wit:
"2. That about the hour of 3:00 o'clock P.M. on the 20th day of March, 1940, petitioner in the company of her child, Andrew J. Tippett, Jr., aged eight years, and her sister-in-law, Mrs. Leroy Tippett, entered the defendant F.W. Woolworth Company store, located at 518 Texas Street in this City and Parish for the purpose of purchasing merchandise.
"3. That petitioner and those accompanying her remained in the defendant's store, located at 518 Texas Street, about 30 or 40 minutes, purchasing during said interval various and sundry articles of merchandise.
"4. That having completed her purchases, plaintiff and those accompanying her proceeded to leave the store by way of its exit farthest away from Red River and facing on Texas Street.
"5. That just previous to her exit and on her way out, but before she had left the confines of the store, she was struck severely and violently by a large negro in flight and thrown from the inside of the store outward, over and against the walls of said store, thence onto the cement passageway that leads from the store to the sidewalk lining Texas Street.
"6. That at this particular season of the year, which was that preceding Easter, namely the Easter Season, defendant's store was considerably crowded and congested in that it was filled with patrons.
"7. That one of defendant's clerks, a salesgirl, acting within the agency and scope of her employment in keeping a careful eye on the merchandise at her counter, a duty incidental to and part of her main duties, perceived the said negro referred to in Article 5, steal an article of merchandise.
"8. That the said salesgirl, with solely her employer's interest in mind, with utter disregard for the congested and crowded condition of the store, and with lack of *Page 462 
forethought as to what the consequences might be, negligently and carelessly proceeded to scream and remonstrate with all of the excitement that she could possibly muster that the article was stolen.
"9. That when said salesgirl screamed in such manner, the negro became panic-stricken and proceeded to flee from the place, the salesgirl following, chasing him in his flight and screaming that he be apprehended.
"10. That said salesgirl was acting within the agency and scope of her employment in putting forth the cry that the article was stolen, chasing the thief and screaming that he be stopped; that her sole interest was to benefit her employer by recovering the article stolen.
"11. That so acting within the agency and scope of her employment, the said salesgirl was negligent in that she should have realized that her action in said manner would create pandemonium and consternation due to the crowded condition of the store, and that in all probability, someone would surely be injured in the result.
"12. That the said negro in his flight, struck the petitioner, tearing the coat which she was wearing so as to render it unfit for use and knocking the petitioner to the floor in such violent and severe manner as to cause her extreme personal injuries and damages.
"13. That the impact with the said negro was of such force and violence as to cause immense nervous shock, coupled with severe injuries, lacerations and bruises about her whole and entire body, as well as severe and intense internal injuries.
"14. That immediately following the occurrence, petitioner was compelled to remain in bed for two weeks under the instructions of her physician; that during a greater portion of that confinement, petitioner was forced to employ the services of a practical nurse.
"15. That previous to this occurrence, petitioner had performed all of the household duties incidental to the upkeep and care of her home, but that since that time petitioner's disability has compelled her to employ a maid to perform such duties.
"16. That since and due to the occurrence, petitioner has suffered intense and severe headaches, which before that time she had not experienced; that petitioner's ability to operate her automobile has been hampered in such manner that her endeavor in that regard invariably results in intense pain.
"17. That solely as a result of said impact, petitioner has suffered injuries about the back, the pelvic region and particularly about and around the lower part of her spine; that petitioner has suffered internal injuries of such gravity as to seriously affect all of her female organs and her digestive system, both particularly and generally; that petitioner is informed, believes and so alleges that said injuries are permanent and will be the cause of pain and suffering throughout the remainder of her life, hampering her ability to perform any kind of work, household or otherwise.
"18. That at the time of and immediately following the accident and even now petitioner has suffered intense, continuous and excruciating pain.
"19. Petitioner avers that the injuries and damages set forth herein were caused solely and entirely by the gross negligence and carelessness and utter disregard of petitioner's rights on the part of the defendant company, its agents and employees, acting within the scope of their employment, and that petitioner did in no way contribute to the occurrence.
"20. That petitioner under the consequences has incurred innumerable bills and expenses in the line of doctor's fee, nurse's fee, medicine and clothing damage; that petitioner itemizes her total and entire damages, both personal and otherwise, as follows:
Doctor's fee for necessary care and treatment .......... $ 150.00 Nurse's fee, 10 days at $2.00 .......................... 20.00 Coat ................................................... 29.00 Medicine ............................................... 15.00 Maid, 7 wks. at $4.00 per week ......................... 28.00 Nervous shock .......................................... 2000.00 Pain and suffering ..................................... 5000.00 Permanent Injury ....................................... 10000.00 __________ $17242.00
"That petitioner has made amicable demand on the defendants, but all to no avail.
"Wherefore, petitioner prays that the defendants be duly cited to appear and answer this petition and that they be served with a copy of same; and after due proceedings had, there be judgment rendered in favor of plaintiff, Mrs. Janice Wilkison Tippett, and against the defendants, F.W. Woolworth Company and The Travelers, in solido, in the full sum of $17,242.00, together *Page 463 
with legal interest thereon from date of judicial demand until paid, and for all costs of these proceedings. Prays for all such further relief as law, equity and the nature of the case may allow."
Defendant filed exceptions of no cause and no right of action. The lower court sustained the exception of no cause of action and dismissed plaintiff's suit. From that judgment plaintiff is prosecuting this appeal.
As the petition discloses, this is an action ex delicto for personal injuries under Article 2315 of the Revised Civil Code and to state a cause of action, there must be acts of negligence alleged on the part of the defendant or its agent.
The allegations of negligence set out in the petition are that a salesgirl in the employ of defendant saw a large negro steal an article of merchandise from the counter behind which she worked; that she began screaming and remonstrating that the negro had stolen an article and that when she screamed the negro fled; that she followed him screaming out that he be apprehended. That the store was crowded and her screams caused the negro to flee; that she should have known her screams would have had this effect and should not have made any outcry; and that the negro ran over plaintiff near the front exit of the store. It is plaintiff's contention that the salesgirl's screams put the negro in motion and were, therefore, the proximate cause of the accident and injuries to plaintiff.
We are of the opinion there is a wide difference between a human being fleeing to escape arrest for a crime and one putting in motion some inanimate thing which causes damage to another before it is stopped. For example, if this salesgirl had started a heavy ball rolling toward the front entrance and had struck plaintiff and caused her damage, there would be no doubt as to the liability of defendant, but certainly defendant cannot be held liable when a thief in an effort to escape arrest flees and runs over someone who happens to be in the store. When the salesgirl put the heavy ball in motion, she would have been negligent but when she attempted to apprehend a thief, she was not negligent. She was performing her legal duty to her employer and to society. If she was required to remain quiet and make no effort to apprehend the thief for fear someone might be injured and her employer mulcted in damages, then all pre-holiday seasons would be field days for shoplifters who could visit the crowded stores, fill their pockets at will and leisurely depart. It is common knowledge that a shoplifter will flee when detected in his crime and in many instances successfully make his getaway, as the one in this case did. It does not require an outcry to cause them to flee. The mere knowledge they have been detected is sufficient.
If the salesgirl had remained quiet after she saw the thief take the article and allowed him to make his way out of the store unmolested, she would have been derelict in her duty to her employer and to society. No doubt her screams gave knowledge to the thief that he had been detected and that caused him to flee, but certainly her screams did not direct him in the course of his flight. He was the one who controlled the course he would pursue. He could have gone out the other exit, could have pushed plaintiff out of the way or gone around her. It was the thief who controlled his own actions after he started his flight and the damage was caused, not from any negligence of the salesgirl who was performing her duty to her employer and to society, but was caused by the thief in his utter disregard of the rights of others and the law of the land.
We are convinced the judgment of the lower court is correct and it is affirmed.